IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GARY HAMMOND and JIM REED, on behalf of themselves and all similarly situated individuals, Plaintiffs, v. ALCOA, INC., ALCOA RETIREMENT PLAN II, RULE IID, and THE REYNOLDS METALS COMPANY RETIREE GROUP BENEFITS PLAN, Defendants. | Civil Action No. 07-1746 |

MEMORANDUM and ORDER

Gary L. Lancaster,
U.S. District Judge                                    December 4, 2008

          This is an ERISA case.  Plaintiffs, Gary Hammond and

Jim Reed, purportedly on behalf of themselves and their former co-

workers, allege that their pension plan has wrongfully withheld a

special plant shutdown benefit from them, called the 55/10 Benefit,

in violation of the Employee Retirement Income Security Act

(ERISA), 29 U.S.C. § 1001, et seq.  Plaintiffs seek injunctive

relief to prevent future ERISA violations, as well as monetary

damages, including interest and attorneys' fees.

          The Alcoa Plan[1] has filed a motion for judgment on the

pleadings or, in the alternative, for summary judgment.  [doc. no.

24].  The Plan argues that all of Hammond and Reed's claims fail as

---

[1]      Upon unopposed motion, The Alcoa Retirement Plan
II, Rule IID was substituted for the Reynolds
Metals Company Pension Plan by order dated May 22,
2008.

a matter of law because the undisputed facts demonstrate that they, and their co-workers, were not eligible for the special and contingent 55/10 Benefit. For the reasons set forth below, we grant the motion for judgment on the pleadings.

## I. FACTUAL BACKGROUND

Hammond and Reed were hourly employees at the Reynolds Metals factory in Colbert County, Alabama. On March 31, 1999, Reynolds sold its Colbert County, Alabama facilities to Wise Alloys, LLC. Reynolds treated this sale as a plant shutdown for benefits purposes even though most employees, including Hammond and Reed, remained employed with Wise at the same facility after the sale. The effect of this characterization was that the workers were deemed to have been laid off on April 1, 1999.

At the time of these events, Hammond and Reed were participants in the Reynolds Metals Company Pension Plan for Hourly Employees, an ERISA-governed plan. The Reynolds Plan included a special benefit, commonly referred to as the 55/10 Benefit, or the 55/40 Benefit, depending on whether calendar years or calendar quarters were used to calculate the benefit. The benefit provides that a participant who has:

> ...at least forty (40) calendar quarters [or 10 years] but less than one hundred twenty (120) calendar quarters of service and has attained the age of 55 years but has not attained age 62

2

> may retire, provided that at the time of retirement the Employee
> (a) has been laid off as a result of a permanent shutdown of a plant, department or substantial portion thereof, or
> (b) has been absent from work continuously because of layoff, sickness or accident for a period of three years....

Reynolds Plan, Section III(6). Hammond and Reed seek benefits under this section of the Reynolds Plan. Hammond and Reed also seek coverage under The Reynolds Metals Company Retiree Group Benefits Plan, but acknowledge that they will not qualify for health care coverage unless they qualify for the 55/10 Benefit.

Alcoa purchased Reynolds in May of 2000. As a result, the Reynolds Plan was merged into the Alcoa Retirement Plan II, Rule IID. Pursuant to Section 7.8(c) of the Alcoa Plan, participants who were covered by the Reynolds Plan at the time of the merger remained eligible to receive any benefit under the terms of the pre-existing Reynolds Plan, provided they met the eligibility requirements under the Reynolds Plan.

Under the Reynolds Plan, a participant's eligibility for and the amount of his pension benefits are determined on the date that pension service is terminated. That termination date is referred to as a "break in service" date. Reynolds Plan, Section VI(A)(6). A break in service occurs when there is an "[a]bsence due to a layoff or physical disability either of which continues for more than two (2) years." Id. at Section VI(A)(2)(c)(i).

3

Therefore, under these provisions of the Reynolds Plan, after a participant has been laid off for two years, his pension service is automatically terminated, and, as a result, his eligibility for and the amount of his pension must be determined as of that date.

The rules under the Alcoa Plan are similar. A participant's eligibility for any benefit formerly available under a merged plan, _e.g._ The Reynolds Plan, is determined as of a "severance date" that terminates his or her pension service. Alcoa Plan, Section 7.8(e). The Alcoa Plan defines a severance date to include "the second anniversary of the date a Participant has a Layoff." Id. at Article 2. Therefore, under either plan, a participant's pension eligibility is determined two years after he is laid off.

However, a special rule extended the date by which the age requirement could be met for the 55/10 Benefit. Under this rule, if a participant had 10 years of service prior to his break in service date, he was given an extra year to "grow into" the age requirement of the 55/10 Benefit. Section VI(A)(2)(c)(iii) of the Reynolds Plan provides that:

> an employee, who has had a break in service by reason of an absence of two years under paragraph (c) [_e.g._, due to layoff], who would have become eligible for an immediate pension within the following twelve (12) month period, except for such break in service, shall be considered eligible for such immediate pension provided he or she has seniority rights under the Labor Agreement.

4

Thus, if a participant turned 55 within three years of his layoff, he would have been entitled to receive the 55/10 Benefit. Accordingly, in this case, Hammond and Reed had until March 31, 2002 to attain the age of 55. However, neither Hammond nor Reed turned 55 by that date. Rather, Hammond turned 55 more than a year later, on April 22, 2003, and Reed turned 55 almost 9 months later, on November 27, 2002.

At both the time of the plant sale to Wise, and then when the Reynolds and Alcoa Plans merged, Hammond and Reed received letters indicating that they were eligible only for a Deferred Vested Pension upon attaining normal retirement age.[2] Upon inquiry, the Plan confirmed to Hammond and Reed that they would not be eligible for any other retirement benefits, including, but not limited to, the 55/10 Benefit. Reed attempted to obtain a different special benefit, called the Rule of 65 benefit, through arbitration, but was unsuccessful.

Following these events, on March 30, 2001, Hammond, with a co-plaintiff, filed suit in the United States District Court for the Northern District of Alabama seeking, among other benefits, the 55/10 Benefit, and alleging a breach of fiduciary duty. Reed, with a co-plaintiff, filed a similar suit in the same court on

---

[2] There is some discrepancy as to whether normal retirement age was 62 or 65. However, the exact age of eligibility is not material.

April 2, 2001. The two cases were consolidated. Like this case, both were purported class actions. However, class certification was delayed until after the court decided dispositive motions.

Indeed, on summary judgment, the Alabama district court, applying the arbitrary and capricious standard of review, found that the Plan had properly denied Hammond and Reed's claims for benefits, and did not breach its fiduciary duty to the participants. The Court of Appeals for the Eleventh Circuit, applying a de novo standard of review, affirmed in an opinion dated March 7, 2007. As to the 55/10 Benefit at issue in this case, both courts found that plaintiffs did not have standing to assert a claim to those benefits as none were yet 55 when the complaint was filed in 2001.

Following the resolution of that case, and after turning 55, Hammond and Reed contacted the Plan, again seeking payment of the 55/10 Benefit. On June 21, 2007, the Benefit Appeals Committee informed Hammond via letter that he was not eligible for the benefit. No separate letter was issued to Reed until after this lawsuit was filed. Hammond and Reed filed suit, together, in this court on December 15, 2007. They assert five causes of action: (1) a claim for benefits due, 29 U.S.C. § 1132(a)(1)(b) (ERISA § 502(a)(1)(B)); (2) an early retirement benefits claim, 29 U.S.C. § 1056(a) (ERISA § 206(a)); (3) an anti-cutback claim , 29 U.S.C. § 1054(g) (ERISA § 204(g)); (4) a breach

of fiduciary duty claim, 29 U.S.C. § 1104(a); and (5) a procedural delay claim, 29 U.S.C. § 1133.

## II. LEGAL BACKGROUND

### A. Procedural Standard of Review

A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute, and judgment on the merits may be achieved by focusing on the content of the pleadings, and any facts of which the court may take judicial notice. A motion for judgment on the pleadings may be made at any time after the pleadings are closed. Fed. R. Civ. P. 12(c). As a general rule, if a court "consider[s] matters extraneous to the pleadings" on a motion for judgment on the pleadings, the motion must be converted into one for summary judgment. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). However, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 256 n.5 (3d Cir. 2004); see also Angstadt v. Mid-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004) (applying rule to motion to dismiss). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to

dismiss [or motion for judgment on the pleadings] simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is judged under the same standards as is a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986). Under the standards now applicable to Rule 12(b)(6) motions, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007); *see Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (characterizing *Twombly* as creating a new plausibility paradigm). The facts alleged in the complaint must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. *Twombly*, 127 S.Ct. at 1965; *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005). However, even if a complaint fails to meet these pleading standards, the court should afford the plaintiff an opportunity to file an amended complaint, unless such amendment would be futile. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

B.  ERISA Standard of Review

Typically, where an ERISA-governed plan vests the plan administrator with discretionary authority over benefits determinations and to construe the terms of the plan, judicial review is limited to determining whether the administrator's decision was arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Post v. Hartford Ins. Co., 501 F.3d 154, 160 (3d Cir. 2007). Under that standard, the decision is overturned only if it is without reason, unsupported by substantial evidence, or erroneous as a matter of law. Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000); Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 44-45 (3d Cir. 1993). It is a highly deferential standard of review.

Not surprisingly, Hammond[3] contends that the standard does not apply in this case. He instead asks this court to subject the Plan's determinations to a de novo standard of review, under which we afford the administrator's prior decision no deference. For the reasons set forth below, we agree with Hammond, and will apply a de novo standard of review.

---

[3]  Where there is no distinction between plaintiff Hammond and plaintiff Reed, for example, as when setting forth their legal arguments or factual contentions, we will refer to plaintiffs collectively as Hammond.

While there is no dispute in this case that the Alcoa Plan[4] vests the Benefits Management Committee with discretionary authority, there is also no dispute in the pleadings that the Benefits Management Committee did not deny Hammond's claim for the 55/10 Benefit; the Benefit Appeals Committee did.[5] According to the Plan, the arbitrary and capricious standard should still apply because authority was properly delegated to the Appeals Committee from the Benefit Management Committee. While this conclusion might ultimately prove to be true, we cannot reach it without considering documents outside the pleadings, thus converting this motion to one for summary judgment. We decline the invitation to do so.

To be sure, the Alcoa Plan, the terms of which we may consider on a motion for judgment on the pleadings, authorizes a delegation of authority. Section 13.4 states that "any fiduciary...may designate another person or person to carry out any or all of the duties and fiduciary responsibilities which it has

---

[4] The parties agree that after the Reynolds Plan merged with the Alcoa Plan, the Alcoa Plan governs with respect to plan administration and procedure.

[5] The Appeals Committee did not deny Hammond and Reed's claims until after the Court of Appeals for the Eleventh Circuit issued its decision in the consolidated Alabama cases. Thus, any notion that the Alabama District Court's decision to apply the arbitrary and capricious standard has preclusive effect in this case is without merit. The Alabama court made that ruling before the Appeals Committee issued the denial being challenged in this case.

10

under the Plan and which are specified in the designation."
However, in support of its contention that the delegation of
authority to the Appeals Committee was proper, the Plan relies on
the declaration of Mr. Quaglia, Alcoa's Human Resources Director,
the "Written Consents and Resolutions of the Members of The
Benefits Management Committee", and "the correspondence and actions
taken with regard to Plaintiffs' claims for benefits." Most of
these documents are extraneous to the pleadings.

Regardless, even if we were to rely on these particular
documents, we still could not make a finding that the delegation
was proper. The Alcoa Plan itself requires that the duties and
responsibilities being delegated be "specified in the designation."
We cannot determine whether that requirement has been met without
looking at extraneous evidence. Therefore, we cannot determine
whether the delegation was proper. As such, we will presume that
the delegation was improper for purposes of deciding this motion,
and afford the Appeals Committee's determination no deference. We
will, therefore, consider Hammond and Reed's eligibility for the
55/10 Benefit de novo.

III. <u>DISCUSSION</u>

A. <u>Count I - Section 502 Claim</u>

Hammond brings an action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B) (ERISA § 502(a)(1)(B)). In particular, Hammond seeks payment of the 55/10 Benefit,[6] as well as attendant health care coverage. Applying even a <u>de novo</u> standard of review, we find that under a plain reading of the Plan, Hammond was not eligible for the 55/10 Benefit.

As has been detailed above, the 55/10 Benefit was available in limited situations only. The Benefit was only triggered where a participant had been "...laid off as a result of a permanent shutdown of a plant..." Hammond and Reed satisfied that condition as they were laid off on April 1, 1999, as a result of Wise's purchase of the Reynolds plant at which they worked. Next, the benefit was only available to participants who had 10 years of service. There is no dispute that both Hammond and Reed had in excess of ten years of service when they were laid off. Finally, the special benefit was available to participants who were

---

[6] To the extent Hammond now claims that he, and his co-workers, were entitled to entirely different special benefits under the Reynolds or Alcoa Plans, these claims are not ripe for review by this court. Having raised his right to receive these benefits for the first time in this court, Hammond has failed to exhaust his administrative remedies. As such, allowing Hammond to amend his complaint to add a claim for such benefits would be futile.

12

55 years old. There is no dispute that neither Hammond nor Reed were 55 years old when they were laid off on April 1, 1999.

The parties disagree, however, as to when the age requirement must have been satisfied. The Plan contends that the age requirement must be met by the break in service/severance date, plus any "grown into" period, which under the terms of the Plan amounted to three years from the date of layoff. Hammond contends that there is no deadline by which a participant must meet the age requirement, and that the participant can collect 55/10 Benefits whenever he turns 55. Because the terms of both the Reynolds Plan and the Alcoa Plan are clear as to when eligibility for pension benefits is to be determined, we agree with the Plan.

Both Plans state that a break in service, or severance date, occurs two years after being laid off. In the case of Hammond and Reed, that date was March 31, 2001. Therefore, we must look to Hammond and Reed's circumstances as of March 31, 2001 and determine whether they qualify for the 55/10 Benefit as of that date. Neither Hammond nor Reed was 55 years old on March 31, 2001. However, under the special one year "grow into" period, if either would have turned 55 by March 31, 2002, they could have been eligible for the 55/10 Benefit. Neither Hammond nor Reed was 55 years old by March 31, 2002. Therefore, neither Hammond nor Reed qualified for the 55/10 Benefit under the clear terms of the Plans.

We reject outright Hammond's contention that he became

eligible for the 55/10 Benefit when he turned 55, even though he did so more than three years after he was laid off. There is no support in the Plan documents for such a theory, and it, in fact, contradicts the plain language of the Plans. First, as discussed above, both Plans explicitly establish a date certain on which eligibility for, and the amount of, pension benefits are determined -- the break in service/severance date. Hammond can cite to no provision in the Plans that allows pension benefits to be determined at some different, unspecified future date. Second, the particular benefit that Hammond seeks explicitly provides for an additional one year period in which to meet the age requirement. If, as Hammond contends, a participant could take as many years as he needed to "grow into" the age requirement, the supplementary one year "grow into" period would be superfluous. Hammond's theory contradicts the plain language of the Plan.

As such, upon a _de novo_ review of the terms of the Plans, there is no dispute that Hammond failed to meet the eligibility requirements for collection of the special 55/10 Benefit. As such, the section 502(a)(1)(B) claim fails to state a claim.

B.  <u>Count II -Section 206(a) Claim</u>

Hammond also contends that the Plan violated ERISA section 206(a) by refusing to pay him 55/10 Benefits when he reached the age of 55.  According to Hammond, because he was vested in some form of retirement as of his severance date (_i.e._, his deferred pension), he was entitled to the special plant shut down benefits whenever he reached the age of 55.  Hammond has provided no case law in support of his strained reading of section 206(a), nor has the court found any.

> Section 206(a) states that:
>
> In the case of a plan which provides for the payment of an early retirement benefit, such plan shall provide that a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary of the Treasury.

29 U.S.C. § 1056(a).  According to Hammond, the 55/10 Benefit is protected by section 206(a) because it is a "conditional early retirement benefit."  [doc. no. 33 at p. 20].  Hammond's own argument defeats this claim, and judgment on the pleadings is appropriately entered on this count as well.

By the statute's own terms, the protections of section 206(a) only apply to early retirement benefits that are both nonforfeitable and accrued. 29 U.S.C. § 1056(a). ERISA explicitly defines both of these terms:

> The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, <u>which is unconditional</u>, and which is legally enforceable against the plan.

> The term "accrued benefit" means--
> ...in the case of a defined benefit plan, the individual's accrued benefit...expressed in the form of an annual benefit <u>commencing at normal retirement age</u>...

29 U.S.C. § 1002(19) and (23) (emphasis added).

The 55/10 Benefit is not nonforfeitable because, as Hammond himself explicitly acknowledges, the 55/10 Benefit is conditional. An employee must satisfy not only the years of service and age requirements, but must have also terminated his service under certain specified circumstances, such as an extended layoff as a result of a plant shutdown. Because the benefit in question is conditional, it is not nonforfeitable, and is, therefore, not subject to the protections of section 206(a). Nor is the 55/10 Benefit an accrued benefit as it does not commence at normal retirement age.

16

Courts examining similar plant shut down benefits under section 206(a) have reached the same conclusion. Although these cases are not controlling, their reasoning is instructive. For instance, in Roper v. Pullman Standard, 859 F.2d 1472 (11th Cir. 1988), the Court of Appeals for the Eleventh Circuit considered a 70/80 Benefit that was similar in all relevant respects to the 55/10 Benefit at issue in this case. The court held that the 70/80 pension benefit did not provide employees with a nonforfeitable pension benefit or right "which arises from the participant's service, which is unconditional," because it encompassed other factors besides age and years of service. Id. at 1477. Namely, the employee must have experienced a service break due to, among other things, a plant shut down. Id. at 1475. Similarly, a District Court in West Virginia found that 70/80 and Rule of 65 Benefits, which were both predicated on a plant shut down or other extended absence from work, were neither nonforfeitable, nor accrued under the terms of ERISA sections 1002(19) and (23). Sutton v. Weirton Steel Div. of Nat'l Steel Corp., 567 F.Supp. 1184, 1196 (N.D.W.V. 1983).

Because the 55/10 Benefit is not an early retirement benefit, as defined by section 206(a), Hammond's claim under this section fails as a matter of law.

C.  Count III - 204(g) Claim

Hammond next contends that the Plan violated ERISA section 204(g) by denying him the 55/10 Benefit.  Section 204(g), commonly called the anti-cutback provision, provides that:

> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(d)(2) or 1441 of this title.
>
> (2) For purposes of paragraph (1), a plan amendment which has the effect of--
>
> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
>
> (B) eliminating an optional form of benefit,
>
> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.  In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy...

29 U.S.C. § 1054(g).  According to its plain language, the protections of section 204(g) are only invoked when certain types of benefits are decreased as a result of an amendment to the terms of a plan.

For purposes of this motion, we will consider the 55/10 Benefit to be a type of benefit protected under section 204(g).  It appears that the parties agree on this point.  However, the parties disagree on the threshold issue of whether

18

a plan amendment occurred in this case, and the ultimate issue of whether section 204(g) requires that employees be given an unlimited amount of time to "grow into" the age requirement of the 55/10 Benefit.

There is no dispute that without a benefit-reducing amendment to the plan, there is no section 204(g) claim. <u>Hein v. F.D.I.C.</u>, 88 F.3d 210, 216 (3d Cir. 1996). Such an amendment can take the form of a change in the actual text of the plan itself, or an erroneous interpretation of a plan provision, resulting in the improper denial of benefits. <u>Id</u>. at 216-17. Hammond originally advanced the amendment by erroneous interpretation theory in his complaint. [doc. no. 1 at ¶ 24 ("novel interpretation which amounts to a plan amendment")]. However, Hammond has now abandoned that theory and claims that the Plan was amended when the plant closed, causing the Plan to experience an automatic partial termination. [doc. no. 33 at pp. 28-30]. In support of this novel theory Hammond cites one case, <u>Ashenbaugh v. Crucible Inc., 1975 Salaried Retirement Plan</u>, 854 F.2d 1516 (3d Cir. 1988), the terms of the Plan, and deposition testimony taken in a case filed in a different court. None of these items support Hammond's position.

As an initial matter, we decline to consider the deposition testimony because it is from a different matter, is not needed to resolve the issue before the court, and falls

19

outside of the pleadings. We also decline to accept Hammond's contention that his theory follows necessarily from the terms of the Plan. Hammond relies on Section XI(7) of the Plan, which reads "[u]pon the...partial termination of this Pension Plan, the rights of all affected Employees to benefits accrued to the date of such...partial termination to the extent funded shall be fully vested and nonforfeitable." This provision is commonly found in ERISA plans as it is required in order for the Plan to claim valuable tax advantages under the Tax Code. 26 U.S.C. § 411(d)(3), 26 C.F.R. § 1.411(d)-2(b)(1).

According to Hammond, because all employees were vested at the time of the plant shutdown,[7] a partial termination of the Plan must have occurred. We do not find that Hammond's conclusion must follow, automatically and logically, from this Plan provision. The cited section does not state that partial termination is the only circumstance under which vesting may take place. As this is the only Plan provision to which Hammond cites in support of his theory that the Plan was amended, his section 204(g) claim is tenuous. When combined with the fact that the one case to which he cites does not support his argument, and that two more recent decisions from our court of appeals directly contradict it, his section 204(g) claim fails as a matter of law.

---

[7]    We will assume this fact to be true for purposes of deciding this motion.

20

Hammond cites <u>Ashenbaugh</u> for the proposition that "...the Third Circuit recognized that a plan termination, including a partial termination, is a plan amendment triggering protection under ERISA § 204(g)." [doc. no. 33 at p. 28]. He also cites that case to support his conclusion that he is entitled, contrary to the terms of the Plan itself, to an unlimited number of years to "grow into" the 55/10 Benefit. <u>Ashenbaugh</u> supports neither of those claims. Rather, it reaches the opposite conclusion on both of these points.

<u>Ashenbaugh</u> does not stand for the proposition that partial termination of a plan is an amendment for purposes of section 204(g). In fact, the case explicitly states the exact opposite: "[section 204(g)] does not cover partial terminations and so would not apply here." <u>Ashenbaugh</u>, 854 F.2d at 1526. In addition, <u>Ashenbaugh</u> does not hold that section 204(g), or any other ERISA section, waives the requirements imposed by a plan to receive a conditional benefit. Rather, it explicitly states the opposite: "retirement-type subsid[ies]...are therefore a benefit to which participants are not entitled unless relevant conditions are met...[and]...would not accrue until the conditions imposed by the Plan on their availability are fulfilled" and "...even if the Thirty-Year Benefit were considered an accrued benefit, [IRC section 411] would not have the effect of superseding the age and service requirements of the Plan." <u>Id</u>. at 1527, 1528. Thus,

Hammond has provided this court with no controlling case law in support of his theory that he is entitled to 55/10 Benefits under section 204(g).

Rather, following the reasoning of two opinions issued by the Court of Appeals for the Third Circuit after _Ashenbaugh_ we conclude that Hammond is not entitled to 55/10 Benefits pursuant to section 204(g). _See_ _Hein v. F.D.I.C._, 88 F.3d 210 (3d Cir. 1996); _Dade v. N. Am. Philips Corp._, 68 F.3d 1558 (3d Cir. 1995). The facts of _Hein_ are nearly identical to this case. In _Hein_, the employer sponsored plan provided for a 55/10 benefit. _Hein_, 88 F.3d at 215. Like in the instant case, the plan sponsor sold the facility where Hein worked, terminated its employees (most of whom were immediately hired by the purchaser), but retained control over the plan. _Id_. at 213-14. Upon reaching the age of 55, Hein retired from the purchaser company and filed a claim for 55/10 benefits with the plan sponsor. His claim was denied because Hein had not attained the required age while employed by the plan sponsor, a requirement under the terms of the plan. _Id_.

The court of appeals recognized that in analyzing the section 204(g) claim, it must first "determine whether there has been an 'amendment'" to the plan. _Id_. at 216. Because there was no change in the text of the plan, the court only considered whether there was an improper denial of benefits, thus resulting in a _de facto_ amendment due to erroneous interpretation. _Id_.

22

According to the language of the plan, an employee must have attained the age of 55 by his date of retirement from the employ of a plan sponsor in order to receive the 55/10 benefit. Because Hein was not employed by the plan sponsor at the time he retired (he was employed by the purchaser), he did not meet the requirements of the plan, and was not eligible for the special benefit. Id. at 216-18. The court's analysis is worth quoting in its entirety given its direct application to this case:

> It was one of the conditions originally imposed by the Plan that Hein reach age fifty-five while employed at the Bank in order to qualify for unreduced early retirement benefits. Had Hein met this criterion, ERISA § 204(g) would have protected his benefit from termination. But Hein did not satisfy the Plan requirement, and we cannot read ERISA to change the terms of the Plan and vest Hein with a benefit for which he never qualified.

Id. at 218. The Court of Appeals ultimately concluded that "...ERISA § 204(g) is inoperative; ERISA § 204(g) can protect an entitlement to benefits, but it cannot create an entitlement to benefits when no entitlement exists under the terms of the Plan." Id. at 217.

Likewise, in this case, we have already studied the language of the Plan and concluded that Hammond did not satisfy the requirements set forth in the Plan for receiving the 55/10 Benefit. As such, as in Hein, section 204(g) cannot create an entitlement to the benefit.

The same result obtains under <u>Dade</u>, a case on which the court of appeals relied heavily in <u>Hein</u>. <u>Dade</u> involved an asset sale from Magnavox to MESC after which Magnavox employees became MESC employees. <u>Dade</u>, 68 F.3d at 1560. Magnavox retained the pension plan covering its former employees. <u>Id</u>. Certain employees who had acquired the necessary years of service, but had not met the age requirement for early retirement before the asset sale sought to invoke section 204(g) to use their time employed by MESC to "grow into" the age requirement. <u>Id</u>. at 1560-61. The court defined the issue as "...whether § 204(g) requires credit for the plaintiffs' service with [MESC]," but first reviewed the text of the plan itself to determine whether it called for such crediting. <u>Id</u>. at 1561. The court concluded that it did not. <u>Id</u>.

The court next turned to the possible effect of section 204(g) on the employees' claims. Rejecting the employees' contention that denial of the early retirement benefits was "tantamount to an amendment", the court concluded that "section 204(g) is not applicable under the facts of this case because there has been no amendment of the Plan that reduced a benefit..." <u>Id</u>. at 1562. The court noted that the employees "ignore the fact that [section 204(g)] does not override the conditions originally imposed by the Plan which defined early retirement benefits when they were created." <u>Id</u>. at 1562. Because the employees were

24

unable to satisfy the age requirement under the conditions imposed by the plan terms, they were not entitled to the early retirement benefits under either the plan, or section 204(g).

The same holds true in this case. As detailed above, Hammond and Reed did not reach the age of 55 within the three year time frame set forth in the Plan. Under the reasoning of <u>Hein</u> and <u>Dade</u>, section 204(g) does not create a right to receive benefits to which Hammond and Reed were never entitled under the conditions set forth in the Plan. Hammond's argument is directly contrary to this authority. As such, Hammond's section 204(g) claim fails as a matter of law.

### D. <u>Count IV - Breach of Fiduciary Duty Claim</u>

In his complaint, Hammond alleges that the Plan breached its fiduciary duty by failing to act for the exclusive benefit of the plan participants and beneficiaries in violation of section 404(a) by directing him to file a judicial appeal from the Benefit Appeals Committee's appeal denial letter within 180 days. 29 U.S.C. § 1104(a). Hammond now asserts various other theories under which the Plan allegedly breached its fiduciary duties in his brief in opposition to the Plan's dispositive motion. However, we need not delve deeply into these contentions. As the Plan correctly notes, Hammond's breach of fiduciary claim fails because Hammond was never entitled to receive the 55/10 Benefit

and because the 180 day rule is not being enforced in this case. Hein, 88 F.3d at 224; Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 411 (3d Cir. 1992). As such, Hammond has suffered no harm as a result of this 180 day rule. The issue is not ripe for adjudication by this court.

### E.   Count V - Section 1133 Claim

Finally, Hammond brings a section 1133 claim alleging that the Plan fails to provide adequate notice of benefit denials and a reasonable opportunity for full and fair review thereof to its participants. 29 U.S.C. § 1133. In support of this claim, Hammond alleges that Reed was not given a denial of benefits letter and that neither Hammond, nor Reed, were afforded an opportunity to appeal their denial of benefits. Neither claim is sustainable.

There is no dispute that Reed has now received a denial letter and that this aspect of the section 1133 claim is moot. Moreover, the June 21, 2007 letter to Mr. Hammond upon which this case is based, was an appeals denial letter issued by the Benefit Appeals Committee. As such, Hammond's allegation that his claim for 55/10 Benefits never received a full and fair review is not sustainable. The denial of benefits on which this entire case is based is an appeals denial letter. Hammond had been in communication and litigation with the Plan for years trying to

obtain these 55/10 Benefits. His claim that the Plan did not afford a reasonable opportunity for a full and fair review of his eligibility for the 55/10 Benefit is nonsensical.

As neither Hammond, nor Reed has suffered any harm as a result of the alleged deficiencies in the Plan procedures, there is no basis on which to order the injunctive relief requested under section 1133 in this case. Therefore, this claim fails as a matter of law also.

## IV. CONCLUSION

Because none of Hammond's claims are sustainable as a matter of law, it is appropriate to enter judgment on the pleadings. No amendment to the complaint could resurrect any of the claims, and thus, we need not afford Hammond an opportunity to amend before entering final judgment. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY HAMMOND and JIM REED,      )
on behalf of themselves and      )
all similarly situated           )
individuals,                     )
        Plaintiffs,      )
                                 )
      v.                  )     Civil Action No. 07-1746
                                 )
ALCOA, INC., ALCOA RETIREMENT    )
PLAN II, RULE IID, and THE       )
REYNOLDS METALS COMPANY          )
RETIREE GROUP BENEFITS PLAN,     )
        Defendants.     )

## ORDER

AND NOW this 4th day of December, 2008, IT IS HEREBY

ORDERED that defendant's motion for judgment on the pleadings

[doc. no. 24] is GRANTED.

Judgment shall be entered in defendant's favor.

The Clerk of Court is directed to mark this matter as

closed.

BY THE COURT,

_____, J.

cc: All Counsel of Record